**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Khori Francis,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Doug Collins, et al.,<br><br>　　　　　Defendants. | No. CV-25-01009-PHX-KML<br><br>**ORDER** |

Plaintiff Khori Francis, a former police officer for the Phoenix Veterans Affairs Police Department ("VAPD"), brings a Title VII retaliation claim against Doug Collins in his official capacity as Secretary of Veterans Affairs. Francis has a complicated history of disputes related to his VAPD employment, but his current claim is based on his belief that another VAPD employee played some role in an ongoing Department of Justice investigation. Collins moved to dismiss believing Francis was trying to litigate events that occurred long before 2025. Francis contends his current claim is not based on those earlier events, but he has not provided sufficient factual allegations to support the claim he does wish to pursue. The motion to dismiss is granted with limited leave to amend.

**I.     Background**

Francis began working as a police officer with the VAPD in February 2017. (Doc. 28-1 at 21.) Between January 2022 and February 2025, Francis submitted three separate Equal Employment Opportunity ("EEO") complaints alleging discrimination under Title VII. (Doc. 28 at 2.) Francis's first EEO complaint accused Police Chief Tylor Whitt of

racial discrimination. The parties pursued Alternative Dispute Resolution and Francis voluntarily withdrew his complaint in April 2022. (Docs. 23 at 3; 28 at 3; 28-1 at 8–13.) Through the settlement, Francis withdrew and waived any allegations occurring April 2022 or earlier. (Doc. 28-1 at 9.)

In November 2022, VAPD Lieutenant Joshua Fister sent Francis an email explaining he had discovered discrepancies in Francis's timekeeping and overtime logbook. (Doc. 28-1 at 22.) Francis alleges the email was demeaning and racially charged. (Doc. 23 at 3.) At the time of the email, Francis did not report this event as discrimination to anyone in management or human resources. (Doc. 28-1 at 22.) In January 2023, Francis was formally notified of improper timekeeping allegations, had to surrender his badge, and had his federal arrest authority suspended. (Doc. 23 at 3.) Francis resigned from his VAPD position on January 17, 2023 (Doc. 28-1 at 16), and filed his second EEO complaint in March 2023 alleging constructive discharge due to a hostile work environment (Doc. 28-1 at 15). The agency issued a Final Agency Decision ("FAD") for Francis's second EEO complaint on September 18, 2023, concluding Francis had not established a hostile work environment or conditions amounting to constructive discharge. (Doc. 28-1 at 28–37.) Francis admits he did not seek further review of that decision.

In October 2024, Whitt left his position as Chief. (Docs. 31 at 3; 23 at 4.) Francis also alleges the DOJ investigation into his timekeeping was "inexplicably revived" in January 2025. (Docs. 31 at 3; 23 at 4.) The connection Francis is trying to draw between Whitt's departure and the revival of the investigation is not clear. But regardless, Francis alleged he was informed in January 2025 that the DOJ[1] had once again started pursuing charges against him. (Doc. 23 at 3–4.) Later that month, Francis filed a third EEO complaint alleging the VAPD had retaliated against him by prompting the revival of the DOJ criminal investigation into the time-card matter. (Doc. 31 at 3.) He alleged the

---

[1] In his EEO complaint, Francis stated the investigation was occurring in "state court [this time]." (Doc. 28-1 at 39.) Any amended complaint by Francis should clarify whether it is federal prosecutors or state prosecutors conducting the investigation. State court implies investigation by a state-level official, such as a county attorney. For this order, the court will assume Francis's allegations only relate to federal investigators.

1 retaliation was driven by his prior EEO complaint and Alternative Dispute Resolution
2 settlement. (Doc. 28-1 at 40.) The VA's Office of Resolution Management dismissed
3 Francis's third EEO complaint on February 19, 2025, construing the claim as a collateral
4 attack on DOJ's process and outside VA jurisdiction. (Doc. 28-1 at 45–46.) The decision
5 noted the DOJ is a federal agency distinct and independent from the VA. (Doc. 28-1 at 45.)
6 The FAD gave Francis 30 days to appeal with the EEOC or 90 days to file a civil complaint.
7 (Doc. 28-1 at 47.)

Francis filed this civil action on March 27, 2025. (Doc. 1.) He filed three amended complaints in the months following. (Docs. 5; 20; 23.) Francis's filings have not been entirely consistent, but he now maintains the 2025 revival of the DOJ investigation is the result of new acts of retaliation distinct from his 2023 EEO claims (Doc. 31 at 3–4), while the VA contends this suit is merely a rehashing of his old and untimely claims (Doc. 30 at 1). In July 2025, the VA moved to dismiss for failure to state a claim for retaliation, failure to exhaust administrative remedies, and failure to file a timely complaint. (Docs. 28; 30 at 1.) The motion is fully briefed, including an improper surreply from Francis. (Docs. 29, 30, 31.)

Shortly after the motion to dismiss was fully briefed, Francis filed a motion for protective order seeking to prohibit VA officials "from making any further public references to [Francis's] pending discrimination lawsuit." (Doc. 32 at 4.) According to that motion, Deputy Chief and Acting Police Chief Alan Barone made disparaging remarks during an August 2025 staff meeting about Francis's lawsuit and another discrimination case. (Doc. 32 at 3–4.)

**II.     Standard**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted)). This is not a "probability requirement," but a requirement that the factual allegations show "more than a sheer possibility that a defendant has acted

unlawfully." *Id.* A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

### III. Analysis

The motion to dismiss is largely based on an (understandable) misinterpretation that Francis was attempting to litigate matters from all three of his EEO complaints. But Francis has now made clear he is only interested in pursuing a single claim for retaliation based on events from 2025. (Doc. 31 at 1.) Based on that concession, the court need not address the outcome of Francis's first and second EEO complaints, which would be time-barred or otherwise precluded. 29 C.F.R. § 1614.504 ("Any settlement agreement knowingly and voluntarily agreed to by the parties, reached at any stage of the complaint process, shall be binding on both parties."); *see also Walker v. U.S. Postal Serv.*, No. CV-07-1566-PHX-ROS, 2009 WL 2132691, at *2 (D. Ariz. July 16, 2009) (applying 29 C.F.R. § 1614.504); *see also Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 92 (1990) (barring untimely suit); *Leorna v. U.S. Dep't of State*, 105 F.3d 548, 550–52 (9th Cir. 1997) (barring suit for failure to timely exhaust administrative remedies). The court can focus entirely on the third EEO complaint, and there is no real dispute that Francis adequately exhausted this claim.

#### a. Judicial Notice

Collins requests the court take judicial notice of Exhibits 1–8, which consist of materials from the administrative record of Francis's prior EEO proceedings. (Doc. 28 at 2.) In employment discrimination cases, the administrative record of a plaintiff's EEO claims is routinely treated as a matter of public record subject to judicial notice. *See Cunningham v. Litton Indus.*, 413 F.2d 887 (9th Cir. 1969) (taking judicial notice of EEOC proceeding); *see also Leon v. Danaher Corp.*, 2011 WL 13190172, at *3 (D. Ariz. 2011) (same). Because exhibits are properly subject to judicial notice, the court may consider them when ruling on Collins's motion. *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th

Cir. 2003) ("When ruling on a Rule 12(b)(6) motion, a court may consider certain materials—documents attached to the complaint, documents incorporated by reference, and matters of judicial notice—without converting the motion into one for summary judgment."). Judicial notice is taken of the existence and contents of the EEO administrative materials for the limited purpose of analyzing exhaustion and timeliness.

### b. Exhaustion of Administrative Remedies and Timeliness

Administrative exhaustion is ordinarily a threshold question that should be resolved before reaching the merits of the underlying claims. *Cf. Albino v. Baca*, 747 F.3d 1162, 1170 (9th Cir. 2014) ("Exhaustion should be decided, if feasible, before reaching the merits of a prisoner's claim.").[2] A plaintiff must exhaust administrative remedies before filing suit in district court. *See* 42 U.S.C. § 2000e-16(c); *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 832–33 (1977); *Sommatino v. United States*, 255 F.3d 704, 708 (9th Cir. 2001). Although Title VII's administrative exhaustion requirement is nonjurisdictional, *see Fort Bend County v. Davis*, 587 U.S. 541, 550–51 (2019), plaintiffs must still substantially comply with it. *See Leong v. Potter*, 347 F.3d 1117, 1122 (9th Cir. 2003). The exhaustion requirement is subject to waiver, estoppel, and equitable tolling. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982).

The VA's decision letter on Francis's third EEO complaint stated the DOJ was the proper agency to challenge the ongoing criminal investigation and dismissed Francis's EEO complaint for "failure to state a claim" under 29 C.F.R. § 1614.107(a)(1). (Doc. 28-1 at 46.) Although the VA cited the regulatory subsection on legal insufficiency, its reasoning indicates that another agency was the proper forum, and the decision letter clearly states Francis can file in U.S. District Court. (Doc. 28-1 at 44, 47.) The applicable regulation further makes clear this letter was a final action by the agency. *See* 29 C.F.R. § 1614.110(b); *see also* 42 U.S.C. § 2000e–5. Following a right-to-sue notice, an individual has 90 days to file suit. 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.407(a). Francis filed

---

[2] The court notes that under *Perttu v. Richards*, 605 U.S. 460 (2025), a jury may need to decide factual disputes about exhaustion that overlap with the merits. Here, the exhaustion issues are undisputed and can be resolved as a matter of law at this stage.

suit 36 days after receiving the right-to-sue notice. (Doc. 1.) Therefore, administrative remedies have been adequately exhausted for Francis's retaliation claim based on 2025 events.

Collins argues Francis did not properly exhaust his claim because, in Collins's view, the 2025 EEO claim is the same claim as in Francis's second EEO complaint. (*See* Docs. 28 at 4, 7–12; 30 at 2–4.) Francis, however, maintains the third complaint concerns distinct and more recent events. (Doc. 31 at 1.) Collins's confusion is not surprising because Francis's allegations and arguments have shifted and are difficult to understand. But construed liberally in his favor, Francis's third EEO complaint contains a new allegation of retaliatory prosecution by the DOJ beginning around January 2025. (Doc. 28-1 at 39–40.) Although this claim may fail on the merits, it was not included in the 2022 or 2023 complaints. And since the 2025 EEO complaint received an FAD, administrative remedies have been properly exhausted. To be clear, the only claim that survives the administrative exhaustion analysis is the following: Title VII retaliation by the VA through the DOJ's investigation starting around January 2025.

### c. Failure to State a Claim

Properly limited to events in 2025, Francis's complaint fails to allege facts sufficient to state a plausible Title VII retaliation claim. To establish a prima facie case of retaliation, a plaintiff must show: (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action.[3] *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1093–94 (9th Cir. 2008). The first element is satisfied: the parties do not dispute Francis engaged in protected EEO activity. But Collins argues Francis has not satisfied the second or third elements. (Doc. 28 at 12.)

---

[3] The requirement of establishing a prima facie case is an "evidentiary standard" and not a "pleading requirement[]." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002). Thus, a complaint cannot be dismissed merely because it does not contain facts establishing all the requirements of a prima facie case. *See Austin v. Univ. of Oregon*, 925 F.3d 1133, 1137 (9th Cir. 2019). That said, a plaintiff's complaint must still include "sufficient, nonconclusory allegations plausibly linking the [adverse] action to discrimination" or retaliation. *Id.* at 1138 (applying this standard in the Title IX context).

Although the second element is usually described as an "adverse employment action," Title VII's anti-retaliation protections extend to former employees. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997). Accordingly, a plaintiff need not allege a direct impact on his ongoing employment. Rather, the "adverse action element is present when a reasonable [person] would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable [person] from making or supporting a charge of discrimination." *Emeldi v. Univ. of Oregon*, 673 F.3d 1218, 1225 (9th Cir.), *republished as amended at* 698 F.3d 715 (9th Cir. 2012) (simplified). Francis has not alleged any facts showing the DOJ's actions impacted him in a way that would dissuade a reasonable person from engaging in protected activity. The complaint's silence as to the consequences for Francis of the alleged investigation means the second element for retaliation is not met.

Even if the court were to ignore Francis's failure to clearly identify the adverse action at issue, Francis omitted any allegations supporting the third element for a retaliation claim, but-for causation. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013) (requiring but-for causation in retaliation context). For this element, Francis must allege sufficient facts to render it plausible the unlawful retaliation would not have occurred in the absence of his protected activity. Francis does not plausibly allege the VA took, directed, or substantially influenced the DOJ's investigation, nor does he show the investigation would not have occurred had he not engaged in protected activity. The VA's 2025 dismissal letter expressly disclaimed involvement, and Francis offers only speculative and conclusory assertions that the DOJ investigation was prompted by VA officials and somehow connected to Whitt's departure from the VA. Such statements unaccompanied by factual allegations do not support a plausible inference that the VA caused or substantially influenced the DOJ investigation. *See Iqbal*, 556 U.S. at 678. And the nearly two-year gap between Francis's 2023 protected activity and the 2025 alleged retaliation weakens any inference of causal connection. *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002) ("nearly 18-month lapse between protected

activity and an adverse employment action is simply too long, by itself, to give rise to an inference of causation."). For these reasons, Francis fails to state a claim under the third prong of the retaliation analysis.

Because Francis's complaint contains only the single claim for retaliation, the complaint is dismissed in its entirety. Francis is given leave to amend but in order to state a plausible claim for retaliation, an amended complaint must include significantly more facts. Specifically, Francis must identify the adverse action taken against him and, most importantly, he must allege sufficient facts to show a causal link between his protected EEO activity in 2022 or 2023 and the adverse action in 2025. To be clear, if Francis cannot allege specific facts showing an adverse employment action and a well-founded, non-speculative causal connection between his protected EEO activity and the DOJ's 2025 criminal investigation, the court will not find a plausible Title VII retaliation claim.

### d. Protective Order

Lastly, Francis moves for a "protective order" to prohibit VA officials from making public references to this pending discrimination lawsuit. He identifies a single staff meeting at which a VA official briefly mentioned the case while discussing a news article. (Doc. 32 at 1–2.) Although labeled a protective order, the relief sought is effectively a gag order. Such orders implicate significant First Amendment concerns and may be granted only if the speech poses a clear and present danger or a serious and imminent threat to a protected competing interest, the order is narrowly drawn, and less restrictive alternatives are unavailable. *Levine v. U.S. Dist. Ct. for Cent. Dist. of California*, 764 F.2d 590, 595 (9th Cir. 1985); *see also Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559, 562–63 (1976). Here, the comments occurred at an internal workforce meeting, not in a public forum that could influence a jury or affect the fairness of the proceedings. Francis has not shown any serious or imminent threat to a protected interest, demonstrated that less restrictive measures would be inadequate, or shown how the requested order is narrowly tailored. Because Francis does not satisfy the high standard for gag orders, the motion is denied.

Accordingly,

**IT IS ORDERED** the Motion to Dismiss (Doc. 28) is **GRANTED**. All claims arising from events resolved by the April 2022 settlement or adjudicated in the September 2023 FAD are **DISMISSED WITHOUT LEAVE TO AMEND** for failure to timely exhaust. Francis's 2025-based retaliation theory is **DISMISSED WITH LEAVE TO AMEND** for failure to state a claim. Plaintiff shall file an amended complaint no later than **November 4, 2025**. The Clerk of Court is directed to enter a judgment of dismissal with prejudice if no amended complaint is filed by that date.

**IT IS FURTHER ORDERED** the Motion for Protective Order (Doc. 32) is **DENIED**.

**IT IS FURTHER ORDERED** the Motion to Stay (Doc. 33) is **GRANTED IN PART**. The **November 4, 2025**, deadline for plaintiff to file his amended complaint remains in effect. Upon the filing of an amended complaint, this case will be stayed pending further order. Defendant shall respond to the amended complaint within fourteen days of the restoration of appropriations.

Dated this 21st day of October, 2025.

Honorable Krissa M. Lanham
United States District Judge